**John Louis WALKDEN, Appellant**

**v.**

**COMMONWEALTH OF PENNSYLVA-NIA, DEPARTMENT OF TRANS-PORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted July 3, 2014.

Decided Nov. 6, 2014.

John Louis Walkden, pro se.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellee.

BEFORE: RENÉE COHN JUBELIRER, Judge, ROBERT SIMPSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Senior Judge GARDNER COLINS.

John Louis Walkden (Licensee) appeals, *pro se*, from an order of the Court of Common Pleas of York County (Trial Court) denying his appeal from a one-year suspension of his driver's license imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) for refusal of chemical testing in violation of Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, commonly referred to as the Implied Consent Law. We affirm.

On August 14, 2013, Pennsylvania State Police Trooper Crystal Dugan was dispatched for a disturbance call from the owner of the Peach Bottom Inn in Peach Bottom Township, Pennsylvania reporting that a white Jeep had almost run him over in the parking lot of the Inn and the driver of the vehicle, who appeared to be intoxicated, cursed at him. (Jan. 22, 2014 Hearing Transcript (H.T.) at 4, 15.) Trooper Dugan located a vehicle matching this description in the parking lot and spoke with the occupant of the vehicle, Licensee, who slurred his speech, had difficulty responding to questions and could not locate his license. (*Id.* at 4–6.) Licensee told Trooper Dugan that he was not sure where he was or how he had arrived there, but he responded in the affirmative when asked if he had driven to his present location. (*Id.* at 6.) Trooper Dugan detected the odor of alcohol emanating from the vehicle and noticed an open bottle of vodka in the passenger area of the vehicle. (*Id.* at 5, 7–8, 14.)

Trooper Dugan asked Licensee to step out of the vehicle and perform field sobriety tests, however Licensee needed assistance to exit the vehicle and once on his feet was unable to perform the tests. (*Id.* at 6–7.) Trooper Dugan then placed Licensee in custody and transported him to York Hospital for chemical testing. (*Id.* at 7–9.) Trooper Dugan read the DL–26 Implied Consent Warning Form twice to Licensee advising him that failure to consent to testing would result in suspension of his driving privileges and asked him to provide a blood sample for testing. (*Id.* at 9–10; Hearing Ex. C–1, DL–26 Form.) Licensee refused to submit to blood testing or sign the DL–26 Form and instead requested that his handcuffs be taken off. (H.T. at 10–11; Hearing Ex. C–1, DL–26 Form.) Trooper Dugan explained to Licensee that the handcuffs would be removed when the blood sample was taken, however she needed him to answer affirmatively

that he would submit to a blood test before she took them off, but Licensee still refused the blood test. (H.T. at 11.)

■ By letter dated August 30, 2013, the Department notified Licensee that his license was being suspended for a period of one year based upon his refusal to submit to chemical testing. (Hearing Ex. C–1, Notification.) Licensee appealed the suspension and a hearing was held before the Trial Court on January 22, 2014. Following the hearing, the Trial Court issued an order dismissing Licensee's appeal and reinstating the suspension. In an opinion issued in support of the order, the Trial Court held that Licensee's admission that he was driving was sufficient evidence for Trooper Dugan to arrest Licensee for driving under the influence and there was no requirement that he be given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because Licensee was not in custody at the time he made that statement. The Trial Court further held that Licensee's refusal to submit to chemical testing was not rendered invalid by Trooper Dugan's insistence that he remain in handcuffs until he agreed to the test because Licensee was not entitled to have his handcuffs removed while considering whether to agree to chemical testing and anything less than unconditional assent to the test is considered a refusal. Licensee appealed the Trial Court's order to this Court.[1]

■ The four elements that the Department must prove to sustain a one-year driver's license suspension under the Implied Consent Law are that the licensee (i) was arrested for driving under the influence by a police officer who had reasonable

grounds to believe that the licensee was operating the vehicle under the influence of alcohol or a controlled substance; (ii) was asked to submit to a chemical test; (iii) refused to do so; and (iv) was warned that a refusal would result in the suspension of his driver's license. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 558 Pa. 439, 737 A.2d 1203, 1206 (1999); *Marone v. Department of Transportation, Bureau of Driver Licensing*, 990 A.2d 1187, 1190 (Pa.Cmwlth. 2010).

On appeal to this Court, Licensee challenges whether the Department met its burden on the first of these elements in showing that Trooper Dugan had reasonable grounds in arresting Licensee for driving under the influence. Licensee contends that, because the car and headlights were off when Trooper Dugan approached Licensee's vehicle, there was not sufficient objective evidence that Licensee had been in actual physical control and operating a moving vehicle to substantiate an arrest for driving under the influence.

■ The question of whether an officer had "reasonable grounds" to arrest a licensee is a question of law fully reviewable by this Court. *Banner*, 737 A.2d at 1207; *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 72 A.3d 294, 298 (Pa.Cmwlth.2013). "Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Banner*, 737 A.2d at 1207. To determine whether the officer had reasonable

---

1. Our standard of review of a trial court order sustaining a license suspension based upon a refusal to submit to chemical testing is limited to determining whether the trial court's findings are supported by competent evidence

and whether the trial court committed an error of law or an abuse of discretion. *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 72 A.3d 294, 298 n. 5 (Pa.Cmwlth.2013).

grounds to conclude that the licensee was operating a vehicle under the influence, we must consider the totality of the circumstances, including such factors as the location of the vehicle; whether the engine was running; staggering, swaying or uncooperative behavior by the licensee; and the odor of alcohol. *Id.; Stancavage v. Department of Transportation, Bureau of Driver Licensing,* 986 A.2d 895, 899 (Pa. Cmwlth.2009). It is not necessary for an officer to actually witness a licensee operating a vehicle in order to have reasonable grounds to place him under arrest for driving under the influence. *Department of Transportation, Bureau of Driver Licensing v. Paige,* 156 Pa.Cmwlth. 600, 628 A.2d 917, 919 (1993); *Department of Transportation, Bureau of Driver Licensing v. Cantanese,* 111 Pa.Cmwlth. 128, 533 A.2d 512, 514 (1987).

We hold that the Trial Court did not err in concluding that Trooper Dugan had reasonable grounds to arrest Licensee. Trooper Dugan had ample reason to believe that Licensee was intoxicated: she testified that Licensee slurred when speaking, had difficulty responding to her questions, could not get out of the vehicle without her assistance and was unable to perform field sobriety tests. Additionally, Trooper Dugan detected the odor of alcohol and observed a bottle of vodka in the passenger area of the vehicle. Though Trooper Dugan did not personally observe Licensee operating his vehicle, she was dispatched to the Peach Bottom Inn based on a disturbance call from the owner of that establishment reporting that a driver of a white jeep—the same car Licensee was found in—had cursed at him, almost run him over and appeared intoxicated. Trooper Dugan also spoke to the owner of the Inn and another employee when she arrived at the scene and they informed her that Licensee had not patronized the Inn prior to the call. Furthermore, Licensee told Trooper Dugan that he had driven to his present location.

■ Licensee argues that the Department could not have established that he was in "actual physical control" of his vehicle because Trooper Dugan did not find Licensee in his vehicle with the engine running or with his keys in his hand. However, the cases Licensee cites for this argument relate to the burdens on the Commonwealth in proving a criminal driving under the influence violation. *See Commonwealth v. Wolen,* 546 Pa. 448, 685 A.2d 1384 (1996) (plurality opinion); *Commonwealth v. Byers,* 437 Pa.Super. 502, 650 A.2d 468 (1994); *Commonwealth v. Price,* 416 Pa.Super. 23, 610 A.2d 488 (1992). A license suspension case is a civil matter and the reasonable grounds standard applicable here is less rigorous than the beyond a reasonable doubt standard required for a criminal conviction or even the probable cause standard required to substantiate an arrest in a criminal prosecution. *See Banner,* 737 A.2d at 1207; *Marone,* 990 A.2d at 1190; *Vinansky v. Department of Transportation, Bureau of Driver Licensing,* 665 A.2d 860, 862 (Pa. Cmwlth.1995). Moreover, as our Supreme Court has made clear, whether an engine is running is only one of the various circumstances that should be considered in determining whether reasonable grounds exist for an arrest. *See Banner,* 737 A.2d at 1207 (citing *Wolen,* 685 A.2d at 1385). All that is required is some objective evidence that the licensee had in the past, while intoxicated, operated or exercised control over the movement of the vehicle. *Banner,* 737 A.2d at 1207; *Marone,* 990 A.2d at 1190.

■ Trooper Dugan observed several indicia that Licensee was inebriated, detected the odor of alcohol coming from Licensee's vehicle, observed an open con-

tainer in the vehicle and had credible information that Licensee had only recently arrived at the premises and not consumed any alcohol at the Peach Bottom Inn. Even if there are other reasonable inferences that can be drawn from this evidence, the reasonable grounds requirement does not require that the officer rule out all other possible explanations or inferences before making an arrest. *Marone*, 990 A.2d at 1190–91; *Riley v. Department of Transportation, Bureau of Driver Licensing*, 946 A.2d 1115, 1120 (Pa.Cmwlth. 2008). Furthermore, it was reasonable for Trooper Dugan to conclude that it was impossible for Licensee to have become as intoxicated as he appeared in the period between the dispatch and the time Trooper Dugan arrived. *Hasson v. Department of Transportation, Bureau of Driver Licensing*, 866 A.2d 1181, 1186 (Pa.Cmwlth. 2005) ("Case law in DUI criminal cases teaches that alcohol is not intoxicating until absorbed into the bloodstream and that absorption takes place thirty to ninety minutes after consumption.").

 Licensee further argues that his statement to Trooper Dugan that he had driven his vehicle to its location in the Peach Bottom Inn parking lot was inadmissible because he was in custody at the time of his statement and he had not yet been advised of his *Miranda* rights. Licensee contends that Trooper Dugan asked him whether he had driven after she asked him to step out of his vehicle to perform field sobriety tests, and *Miranda* warnings were required before any questioning. The Department argues that Trooper Dugan asked Licensee whether he had driven prior to the request that he perform field sobriety tests and that at most her question was posed during an investigative detention, rather than during an arrest when *Miranda* warnings would have been required.

Initially, we note that while it appears that Trooper Dugan asked Licensee whether he had driven to his current location before she asked him to step out of the vehicle, the exact sequence of events is not entirely clear in Trooper Dugan's testimony.[2] However, even if Trooper Dugan asked Licensee whether he had driven after she had asked him to step out of the car to perform field sobriety tests as Licensee argues, we would still conclude that the Trial Court correctly held that there was no *Miranda* violation in this case.

 Courts of this Commonwealth have divided interactions between law enforcement officers and citizens into three categories: a "mere encounter" or request for information, an "investigative detention," and a "custodial detention" or arrest. *Commonwealth v. Pakacki*, 587 Pa. 511, 901 A.2d 983, 987 (2006); *Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043, 1047 (1995). *Miranda* warnings are required only for interrogations that occur during a custodial detention. *Pakacki*, 901 A.2d at

2. Trooper Dugan testified during her direct examination by counsel for the Department:
 A. When I asked him for his driver's license, he couldn't find his wallet. He picked up a CD. He actually tried to hand me like paperwork or keys or something, and I told him, that's not your identification, I need your driver's license. It took him a while. He was fumbling around a lot. I asked him if he would step out of his vehicle. At that time, I asked him if he could perform field sobriety tests.

 Q. I'm going to just ask you a couple more questions before we get to the field sobriety tests. Did you ask him what had happened or where he was coming from?
 A. I did ask him, you know, why he was at that location, if he knew where he was. He didn't know where he was. He didn't know how he got there. I asked him if he drove. He said, yeah, I drove, but he doesn't remember how he got there or where he was. (H.T. at 5–6.)

987; *Commonwealth v. Smith,* 575 Pa. 203, 836 A.2d 5, 18 (2003). "To determine if a person is in custody for *Miranda* purposes ... depends on whether the person is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Johnson,* 556 Pa. 216, 727 A.2d 1089, 1100 (1999); *see also Smith,* 836 A.2d at 18. Various factors may be weighed in determining whether a detention is investigative or custodial including the basis of the detention; the duration of the detention; whether the detention occurs in a public or private location; whether the detainee was transported against his will; any use or threat of force; and the investigative methods used. *In the Interest of S.J.,* 551 Pa. 637, 713 A.2d 45, 47 (1998); *Taylor v. Department of Transportation, Bureau of Driver Licensing,* 948 A.2d 189, 194 (Pa.Cmwlth.2008). The key distinction between an investigative detention and custodial detention is that an investigative detention lacks the coercive conditions that would make it the functional equivalent of an arrest. *Pakacki,* 901 A.2d at 987; *Commonwealth v. Boczkowski,* 577 Pa. 421, 846 A.2d 75, 90 (2004). The standard for determining whether a detention is custodial is an objective one and requires a review of the totality of circumstances. *Commonwealth v. Sherwood,* 603 Pa. 92, 982 A.2d 483, 499 (2009); *Pakacki,* 901 A.2d at 987.

■ As the United States Supreme Court explained in *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the questioning of a motorist during a routine traffic stop is an investigative, not a custodial, detention and therefore does not trigger *Miranda* protections. *Id.* at 435–442, 86 S.Ct. 1602; *see also Taylor,* 948 A.2d at 194; *Com-*

*monwealth v. Mannion,* 725 A.2d 196, 202 (Pa.Super.1999) (*en banc*). Crucial to the case at hand, the Court in *Berkemer* also concluded that asking a motorist to perform a field sobriety test within public view does not transform a traffic stop into a custodial detention. *Berkemer,* 468 U.S. at 442, 104 S.Ct. 3138. In that decision, the Court likened a traffic stop to a brief stop-and-frisk stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and held that a traffic stop will not become a custodial interrogation unless the motorist is "subjected to treatment that renders him 'in custody' for practical purposes," such as an unreasonable prolongation of the stop, removing the motorist from public view or subjecting a motorist to prolonged or persistent questioning. *Berkemer,* 468 U.S. at 438–40, 104 S.Ct. 3138. The Supreme Court addressed the issue of when a motorist is in custody during a traffic stop where field sobriety tests are performed again in *Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988) (per curiam). In overturning a ruling that the motorist's statement that he had been drinking was inadmissible for lack of *Miranda* warnings, the Court in *Bruder* held that the facts of the case before it revealed the "same noncoercive aspects as the *Berkemer* detention: a single police officer asking respondent a modest number of questions and requesting him to perform a simple balancing test at a location visible to passing motorists." *Bruder,* 488 U.S. at 11, 109 S.Ct. 205 (quoting *Berkemer,* 468 U.S. at 442, 104 S.Ct. 3138) (punctuation omitted).

Here, Licensee was already pulled over and parked when Trooper Dugan arrived on the scene, and Trooper Dugan's questioning of Licensee occurred in the parking lot of an establishment that was visible to the public. *See Smith,* 836 A.2d at 18 (holding that the request by an officer for a suspect to exit a bus and answer ques-

tions in a public parking lot regarding a bag containing cocaine found on the bus did not create a circumstance that would require *Miranda* warnings). There is no evidence either that Trooper Dugan's questioning of Licensee was coercive, sustained or repetitive or that their interaction was prolonged beyond the appropriate amount of time required for her to investigate whether Licensee was driving under the influence. Furthermore, though Trooper Dugan had to physically assist Licensee to his feet so that he could attempt to perform the field sobriety tests, this was not indicative of any show or threat of force but rather was required by Licensee's intoxicated state. The record therefore reflects that Trooper Dugan's interactions with Licensee were similar in nature to the investigative detentions in *Berkemer* and *Bruder*, and do not show the coerciveness or restriction of freedom that have been determined in other cases to be the functional equivalent of an arrest. *Cf. Commonwealth v. Meyer*, 488 Pa. 297, 412 A.2d 517 (1980) (suppressing statement given by motorist questioned after being detained in a patrol car for over 30 minutes for failure to provide *Miranda* warnings); *Commonwealth v. Turner*, 772 A.2d 970 (Pa.Super.2001) (*en banc*) (concluding that motorist involved in an accident and placed in the back of a police car by officer arriving at the scene should have been issued *Miranda* warnings prior to questioning). Accordingly, we reject Licensee's argument that his statement that he had been driving should have been suppressed because he had not yet been advised of his *Miranda* rights.

▆▆▆▆ Finally, Licensee argues that he did not have a meaningful opportunity to submit to chemical testing because Trooper Dugan refused to remove his handcuffs while at the hospital. It is well-established that "anything substantially less than an unqualified, unequivocal assent" to submit to testing constitutes a refusal to do so. *Department of Transportation v. Renwick*, 543 Pa. 122, 669 A.2d 934, 939 (1996); *see also McKenna*, 72 A.3d at 298; *Lanthier v. Department of Transportation, Bureau of Driver Licensing*, 22 A.3d 346, 348 (Pa.Cmwlth.2011). A licensee need not explicitly refuse to submit to testing but may demonstrate through his overall conduct a general unwillingness to submit to testing. *Renwick*, 669 A.2d at 939; *McKenna*, 72 A.3d at 299. Officers are not required to "spend effort either cajoling the licensee or spend time waiting to see if the licensee will ultimately change his mind." *Broadbelt v. Department of Transportation, Bureau of Driver Licensing*, 903 A.2d 636, 641 n. 7 (Pa. Cmwlth.2006) (punctuation omitted) (quoting *King v. Department of Transportation, Bureau of Driver Licensing*, 828 A.2d 1, 5 n. 8 (Pa.Cmwlth.2002)); *see also McKenna*, 72 A.3d at 300. Whether a licensee's conduct constitutes a refusal to submit to chemical testing is a question of law fully reviewable by this Court. *McKenna*, 72 A.3d at 298; *Hudson v. Department of Transportation, Bureau of Driver Licensing*, 830 A.2d 594, 599 (Pa.Cmwlth.2003).

Trooper Dugan's testimony at the hearing demonstrates that once Licensee had been transported to the hospital for testing, she read the DL–26 Form warnings to him and Licensee refused and she read the warnings to him a second time and he again refused.[3] When asked whether Licensee had any questions for her regard-

---

**3.** This Court has held that the warnings on the DL–26 Implied Consent Warning Form are sufficient as a matter of law to advise a licensee of his rights under the Implied Con-
sent Law. *McKenna*, 72 A.3d at 300–01; *Garner v. Department of Transportation, Bureau of Driver Licensing*, 879 A.2d 327, 330–31 (Pa. Cmwlth.2005).

ing the DL–26 Form, Trooper Dugan testified:

> I remember he kept saying that he wanted his handcuffs off of him, and I explained to him that when we draw the blood, the handcuffs would be off of him, but he wanted to just be let go. I explained to him he couldn't be let go.... I just remember he wanted his handcuffs off, and he wasn't going to do it until the handcuffs were off. I explained when we did the test, we would take the handcuffs off. I told him I needed an answer regarding this and reread it, and he still refused. He wasn't going to give blood. He wasn't going to cooperate. I don't know the exact wording he used.

(H.T. at 11.)

Rather than answer affirmatively that he would submit to a blood test, Licensee placed a condition on his answering the question: the release of his handcuffs. Licensee's conduct clearly falls short of the "unqualified, unequivocal assent" necessary for submission to chemical testing. *See Winebarger v. Department of Transportation, Bureau of Driver Licensing,* 655 A.2d 1093, 1095–96 (Pa.Cmwlth.1995) (licensee's statement that only two attempts be made to draw blood and limiting the second attempt to a specific arm placed "impediments and preconditions" that were in effect a refusal to submit to testing); *Colgan v. Department of Transportation, Bureau of Driver Licensing,* 127 Pa.Cmwlth. 479, 561 A.2d 1341, 1342 (1989) (licensee's requirement that blood be drawn from his toe was in effect a refusal of the request that he submit to chemical testing).

Licensee argues that his request that the handcuffs be removed before he consented to testing was reasonable and that Trooper Dugan kept him in handcuffs for no apparent reason as he did not pose a safety risk. There was nothing reasonable about his request. Licensee's behavior demonstrates not a legitimate concern regarding the administration of the blood test, but rather his desire to simply be let go. Licensee was under arrest when he was asked to submit to the chemical test and the determination of whether and in what manner to restrain an individual under arrest is traditionally left to the discretion of the arresting officer. That Licensee had not manifested any overt warnings that he was a danger to the public or himself does not make us reconsider this position, particularly in light of Licensee's apparent high degree of impairment and the location of the testing site in a public hospital.

For the foregoing reasons, we affirm.

### *ORDER*

AND NOW, this 6th day of November, 2014, the order of the Court of Common Pleas of York County in the above-captioned case is AFFIRMED.