# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| William C. Herron, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 543 C.D. 2015 |
| | : | Submitted: September 11, 2015 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | |

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**             **FILED: October 7, 2015**

William C. Herron (Licensee) appeals from an order of the Court of Common Pleas of Bedford County (Trial Court) denying his appeal from a one-year suspension of his driving privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) for refusal of chemical testing in violation of Section 1547(b)(1) of the Vehicle Code,[1] commonly referred to as the Implied Consent Law. On appeal,

---

[1] 75 Pa. C.S. § 1547(b). Section 1547(b)(1) provides, in relevant part:

> (1) If any person placed under arrest for a violation of section 3802 [driving or controlling the movement of a vehicle under the influence of alcohol] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice

**(Footnote continued on next page…)**

Licensee argues that the trial court erred when it determined that the arresting state trooper possessed reasonable grounds to believe that Licensee was in actual physical control of the movement of his vehicle while under the influence of alcohol. Discerning no error, we affirm.

By letter dated October 16, 2014, the Department notified Licensee that his driving privilege was being suspended for a period of one year based upon his refusal to submit to chemical testing. (R.R. at 6a.) Licensee appealed the suspension and a hearing was held before the Trial Court on March 5, 2015.

At the hearing, the Department presented the testimony of Pennsylvania State Trooper Corey Ickes. Trooper Ickes testified that on October 4, 2014, at about 4:50 a.m., he and his partner were dispatched for a disturbance call about someone playing loud music in the parking lot of the Budget Inn in Bedford. (March 5, 2015 Hearing Transcript (H.T.), Amended Reproduced Record (R.R.) at 35a.) Trooper Ickes testified that when he and his partner pulled into the parking lot, Trooper Ickes observed that the brake lights of Licensee's vehicle were on and Licensee was seated behind the wheel. (*Id*.) Trooper Ickes further observed that the hood of the vehicle was still warm when he approached it, and the keys were in the ignition. (*Id*., R.R. at 36a.) Trooper Ickes asked Licensee what he was doing in the parking lot, and Licensee told him that he was staying at the Budget Inn. (*Id*.) Trooper Ickes detected a heavy odor of alcohol emanating from the vehicle, and asked Licensee how he got to the hotel parking lot; Trooper Ickes testified that

---

**(continued…)**
> by the police officer, the department shall suspend the operating
> privilege of the person as follows:
> (i) Except as set forth in subparagraph (ii), for a period of 12
> months.

*Id*.

2

Licensee said he had been at Salsa's Restaurant, which is located across the street from the Budget Inn, and that he drove back over to the hotel. (*Id.*) Trooper Ickes observed that Licensee's eyes were bloodshot and glassy and that he had food all down the front of his body; he performed field sobriety tests and administered a preliminary breath test and thereupon took Licensee into custody and transported him to a hospital where he read Licensee the DL-26 Implied Consent Warning Form. (*Id.*, R.R. at 36a-38a.) Licensee then refused to submit to a chemical test. (*Id.*, R.R. at 41a.)

At the hearing, Licensee testified, however, that he had not driven his vehicle at all since he parked it upon his arrival at the Budget Inn earlier in the afternoon and had instead walked across the street and back from Salsa's Restaurant. (*Id.*, R.R. at 55a-57a.) Licensee testified that he had drinks at Salsa's and remained there until the restaurant closed, that he returned on foot to the Budget Inn, and that after spending some time in his hotel room, he returned to his vehicle so that he could listen to a CD he had made. (*Id.*) Licensee testified that while he was sitting in the vehicle listening to the CD, he turned the car on and off occasionally so that the battery would not run down. (*Id.*, R.R. at 58a-59a.)

Following the hearing, the Trial Court issued an order dismissing Licensee's appeal and reinstating the suspension. In its 1925(a) opinion issued in support of the order, the Trial Court found that Licensee was not a credible witness, noting that his testimony was "unclear, vague and self-contradictory," and disregarded his testimony in deciding the case.[2] (Trial Court Opinion (Trial Ct.

---

[2] Licensee was questioned by Department's counsel with regard to what he said to Trooper Ickes:

Q. Sir, you heard Trooper Ickes testify that you told him that you drove from the restaurant?

**(Footnote continued on next page…)**

3

Op.) at 3.)   The Trial Court found Trooper Ickes to be a credible witness.  (*Id*.)
With regard to Trooper Ickes' testimony that Licensee had stated to him that he
had driven his vehicle back across the street from the restaurant to the hotel, the
Trial Court noted:

> [Licensee] denies driving from the restaurant in his testimony, although he also testified that he doesn't know whether he told [Trooper Ickes] he drove from the restaurant…Based upon our review of the testimony, we find it unclear as to whether [Licensee] did, in fact, drive across the street.  However, we do find that, based upon the totality of the circumstances apparent to him, [Trooper Ickes] reasonably inferred and believed that [Licensee] had driven across the street after imbibing alcohol.  [Licensee] was sitting in a car with a warm engine, pressing the brake pedal, and [Licensee] stated that he had been at the restaurant.  Unfortunately for [Licensee], the fact of whether [Licensee] actually drove across the street is unnecessary for [Department] to succeed.  The issue here is not whether [Licensee] did in fact drive (which would indeed have been a key issue to [Licensee's] criminal prosecution for DUI).  Rather the issue we must decide here is whether [Trooper Ickes] *had reasonable grounds to believe* [Licensee] had operated

---

**(continued…)**

> A.  If I – I did not.  I walked across there because I wouldn't, I don't drink and drive.
>
>              - - -
>
> Q.  You heard Trooper Ickes testify that you told him that you drove from the restaurant, correct?
> A.  I heard him say that.
> Q. And your testimony is that you walked from the restaurant?
> A.  My testimony is I walked there.
> Q.  And you never said that to him?
> A.  I don't, I don't know that I told him I drove there.  He said that I said that.  But I, but I would have said that I walked there.

(H.T., R.R. at 58a, 65a-66a.)

the vehicle under the influence of alcohol. We believe that threshold has been clearly met by [Department].

(Trial Ct. Op. at 2, n.1 (citations omitted).) Licensee appealed the Trial Court's order to this Court.[3]

In order to sustain a suspension of a licensee's operating privilege under the Implied Consent Law for a refusal to submit to chemical testing, the Department must establish that the licensee: (i) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating the vehicle or was in actual physical control of the movement of the vehicle while under the influence of alcohol or a controlled substance; (ii) was asked to submit to a chemical test; (iii) refused to do so; and (iv) was warned that a refusal might result in the suspension of his driver's license. *Kollar v. Department of Transportation, Bureau of Driver Licensing,* 7 A.3d 336, 339 (Pa. Cmwlth. 2010). Licensee challenges only the first of these elements, arguing that the Trial Court erred when it determined that Trooper Ickes had reasonable grounds to believe that Licensee was in actual physical control of a vehicle while under the influence of alcohol.[4]

---

[3] Our standard of review of a trial court order sustaining a license suspension based upon a refusal to submit to chemical testing is limited to determining whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion. *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 72 A.3d 294, 298 n.5 (Pa. Cmwlth. 2013).

[4] In a Statement of Errors on Appeal, Licensee also contended that the Department failed to establish that (i) Trooper Ickes read the required warnings to Licensee, and (ii) that Licensee refused to submit to chemical testing (R.R. at 21a-22a.) However, in his brief, Licensee notes that in light of the Trial Court's 1925(a) opinion, relevant case law, and the hearing transcript, he is withdrawing from consideration these challenges to the sufficiency of the evidence presented by Department. (Licensee's Brief at 6.)

5

The question of whether an officer had "reasonable grounds" to arrest a licensee is a question of law fully reviewable by this Court. *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 72 A.3d 294, 298 (Pa. Cmwlth. 2013). Reasonable grounds to arrest for DUI exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999). "[T]he standard for reasonable grounds is not very demanding and the police officer need not be correct in his belief that the motorist had been driving while intoxicated." *Sisinni v. Department of Transportation, Bureau of Driver Licensing*, 31 A.3d 1254, 1259 (Pa. Cmwlth. 2011). "To determine if this standard is met, the court must consider the totality of the circumstances, including the location of the vehicle, whether the engine was running, and whether there was other evidence indicating that the motorist had driven the vehicle." *Gammer v. Department of Transportation, Bureau of Driver Licensing*, 995 A.3d 380, 384 (Pa. Cmwlth 2010). The concept of "actual physical control" has been construed to mean "control of the movements of either the machinery of the motor vehicle or of the management of the movement of the vehicle itself, without the requirement that the entire vehicle be in motion." *Department of Transportation, Bureau of Traffic Safety v. Farner*, 494 A.2d 513, 516 (Pa. Cmwlth. 1985).

Licensee contrasts the totality of the circumstances in his case with those present in this Court's decision in *Walkden v. Department of Transportation, Bureau of Driver Licensing,* 103 A.3d 432, 437 (Pa. Cmwlth. 2014), where we found reasonable grounds for a state trooper to believe that the licensee had

6

operated his vehicle while under the influence of alcohol. In *Walkden*, a state trooper had received a report from a hotel owner that a white Jeep had almost run him over in his parking lot; the arresting trooper located the vehicle and spoke with its occupant, whose speech was slurred, whose vehicle smelled of alcohol, who had an open bottle of vodka in the passenger area, and who admitted that he had been driving his vehicle. 103 A.3d at 435. The licensee argued that because the engine and headlights were off when the trooper approached his vehicle, there was insufficient objective evidence that he had been in actual physical control to substantiate a DUI arrest. *Id*. at 436.

Licensee distinguishes, *inter alia*, the nature of the complaint (loud music and not erratic driving), the fact that there were no alcoholic beverages found inside his vehicle, his testimony that he did not drive the vehicle while under the influence and his explanation for why he was sitting inside it, and posits that unlike the trooper in *Walkden*, here Trooper Ickes failed to conduct a proper investigation and should have concluded that Licensee was merely disturbing the peace.[5] We find Licensee's argument to be without merit.

---

[5] Licensee also argues that his vehicle was not in transit, but rather parked at the Budget Inn, and cites various criminal DUI cases involving drivers found asleep at locations where the parked vehicle and its occupant had clearly not reached the intended final destination; in those cases, he argues, the location of the vehicle reasonably led to the conclusion that the vehicle was in route when it came to a rest, whereas he was properly parked. However, as our Supreme Court has made clear, the location of the vehicle is only one of the various circumstances that should be considered in determining whether reasonable grounds exist for an arrest. *See Banner*, 737 A.2d at 1207 (citing *Commonwealth of Pennsylvania v. Wolen*, 685 A.2d 1384, 1385). All that is required is some objective evidence that the licensee had in the past, while intoxicated, operated or exercised control over the movement of the vehicle. *Banner*, 737 A.2d at 1207.

As noted by the Trial Court, Trooper Ickes:

> [O]bserved [Licensee] sitting in his vehicle with the brake lights illuminated, and with the keys still in the ignition. The vehicle was sitting in a parking lot and [Trooper Ickes] observed that the hood of the vehicle was warm, indicating that the vehicle had recently operated. [Trooper Ickes] observed several indicators that [Licensee] was intoxicated and [Licensee] told [Trooper Ickes] that he had been at the restaurant across the street.

(Trial Ct. Op. at 5.) Trooper Ickes testified that Licensee said he had driven from the restaurant to the hotel (H.T., R.R. at 36a.) and the Trial Court found this testimony credible. (Trial Ct. Op. at 3.) That is sufficient to constitute reasonable grounds to believe that Licensee drove under the influence. While Licensee testified that he did not drive after imbibing alcohol and that he was in his vehicle only in order to listen to music, the Trial Court found that Licensee was not a credible witness. Questions of credibility are for the Trial Court to resolve. *Gammer*, 995 A.2d at 385.

Examining the totality of the circumstances, we agree with the Trial Court's conclusion that Trooper Ickes had reasonable grounds to believe that Licensee was in actual physical control of his vehicle while inebriated. Accordingly, the Trial Court's order is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William C. Herron, :
  :
           Appellant :
  :
           v. : No. 543 C.D. 2015
  :
Commonwealth of Pennsylvania, :
Department of Transportation, :
Bureau of Driver Licensing :

# **O R D E R**

AND NOW, this 7th day of October, 2015, the order of the Court of Common Pleas of Bedford County in the above-captioned case is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge