## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Isaac Hanna | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | No. 1772 C.D. 2019 |
| Appellant | : | Submitted: June 12, 2020 |

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge[1]
HONORABLE ANNE E. COVEY, Judge[2]
HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                            FILED: April 19, 2021

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (PennDOT) appeals from the Cumberland County (County) Common Pleas Court's (trial court) November 19, 2019 order sustaining Isaac Hanna's (Licensee) appeal and rescinding his driver's license suspension. PennDOT presents one issue for this Court's review: whether the trial court erred by holding that Licensee did not refuse to take a chemical blood test. After review, this Court reverses.

On December 22, 2018, Lower Allen Township Police Officer Kimberly Floyd (Officer Floyd) arrested Licensee for Driving Under the Influence (DUI)[3] and transported him to Carlisle Regional Medical Center (Carlisle Hospital)

---

[1] This matter was assigned to the panel prior to Judge Leavitt completing her term as President Judge.

[2] This case was reassigned to the opinion writer on March 16, 2021.

[3] The parties stipulated that Officer Floyd had reasonable grounds to believe that Licensee was operating a vehicle while under the influence of alcohol or a controlled substance.

for a chemical blood test. En route to Carlisle Hospital, Officer Floyd and Licensee conversed in English. Upon arrival at Carlisle Hospital, Officer Floyd took Licensee to the blood draw room and read him the Implied Consent Warnings (Form DL-26).[4] Licensee asked Officer Floyd to read Form DL-26 again more slowly. *See* Reproduced Record (R.R.) at 21a. Thereafter, Licensee said, *for the first time*, that he did not understand English very well, and requested a translator.[5] *See id.* Officer Floyd called County Communications and requested Language Line to translate for Licensee in Arabic. *See id.* Officer Floyd read Form DL-26 "to the translator in pieces," and the translator repeated it to Licensee in Arabic. *Id.* Licensee requested the translator repeat the last portion of Form DL-26, which states:

> **You have no right to speak with** an attorney or **anyone else before deciding whether to submit to testing**. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

R.R. at 46a (emphasis added). Nevertheless, Licensee asked the translator what he should do. *See* R.R. at 21a. At that point, Officer Floyd deemed Licensee's conduct a refusal to submit to chemical testing. *See id.*

On January 10, 2019, PennDOT issued Licensee an Official Notice of Suspension of Driving Privilege (Notice) for one year, effective March 28, 2019. Licensee appealed from the Notice to the trial court. On September 26, 2019, the trial court held a hearing. On November 19, 2019, the trial court sustained

---

[4] The Implied Consent Warnings are the warnings established in Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i), commonly referred to as the Implied Consent Law.

[5] Licensee speaks Arabic. *See* R.R. at 21a. Officer Floyd testified that Licensee never indicated before this moment that he did not understand any of her questions. *See* R.R. at 20a.

2

Licensee's appeal and rescinded his driver's license suspension. PennDOT appealed to this Court.[6,7]

> **Any person who drives**, operates or is in actual physical control of the movement of a vehicle in this Commonwealth **shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance** if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [S]ection[s] 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under [the] influence of alcohol or [a] controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock) [of the Vehicle Code].

75 Pa.C.S. § 1547(a) (emphasis added). The Pennsylvania Supreme Court has declared:

> **Driving** in Pennsylvania **is a** civil **privilege** conferred on state residents who meet the necessary qualifications. Under the terms of the Implied Consent Law, one of the necessary qualifications to continuing to hold that privilege is that **a motorist must submit to chemical sobriety testing when requested to do so**, in accordance with the prerequisites of the Implied Consent Law, by an authorized law enforcement officer. The obligation to submit to testing is related specifically to the motorist's continued enjoyment of the privilege of maintaining his operator's license.

---

[6] "Our review is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or abused its discretion." *Renfroe v. Dep't of Transp., Bureau of Driver Licensing*, 179 A.3d 644, 648 n.3 (Pa. Cmwlth. 2018).

[7] Licensee did not file a brief with this Court.

3

*Dep't of Transp., Bureau of Driver Licensing v. Scott*, 684 A.2d 539, 544 (Pa. 1996) (citation omitted) (emphasis added).

PennDOT argues that since, by his conduct, Licensee refused to submit to the requested chemical test, the trial court erred by ruling to the contrary.

This Court has held:

> "The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, . . . 130 A.3d 738, 748 (Pa. 2015); *see also Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018). **The question of refusal by a licensee to consent to chemical testing "turn[s] on a consideration of whether the [licensee's] <u>overall conduct</u> demonstrates an unwillingness to assent to an officer's request for chemical testing**." *Nardone*, 130 A.3d at 749.

*Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 496-97 (Pa. Cmwlth. 2018) (emphasis added).

> Pennsylvania courts have long and consistently held that **<u>anything less</u> than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto**. *See Dep't of Transp., Bureau of Driver Licensing v. Renwick*, . . . 669 A.2d 934, 939 (Pa. 1996); *see also McKenna v. Dep't of Transp., Bureau of Driver Licensing*, 72 A.3d 294 (Pa. Cmwlth. 2013) (licensee's **questioning** police regarding consequences of refusal and refusing to sign consent form **constituted refusal to consent to chemical testing**); *Hudson v. Dep't of Transp., Bureau of Driver Licensing*, 830 A.2d 594 (Pa. Cmwlth. 2003) (repeated interruption and aggressive behavior while being read warnings constituted a refusal to consent to chemical testing). Further, **an explicit refusal is not required to find a licensee refused to consent to chemical testing**; "a licensee's conduct may constitute a refusal." *Park*, 178 A.3d at 281; *see also Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 440 (Pa. Cmwlth. 2014) (a general unwillingness to submit to

4

testing demonstrated by a licensee's overall conduct demonstrated a refusal to consent to chemical testing).

*Factor*, 199 A.3d at 497 (emphasis added).

Here, Officer Floyd explained why she contacted the translator:

I was trying to give him the benefit of the doubt, just trying to help him out. He requested it so. [sic] I do understand that after the first time, if he does not submit to the blood test then that is a refusal. I was just being courteous to him.

R.R. at 24a. Officer Floyd was correct. This Court has held: "All that is required is that the officer read the warnings to the licensee and that the licensee be given a meaningful opportunity to comply with the Implied Consent Law."[8] *Park*, 178 A.3d at 281.

In the instant case, Officer Floyd read the warnings to Licensee *three separate times*. At no point did Licensee "assent to submit to chemical testing." *Factor*, 199 A.3d at 497. Rather, he asked that the warnings be repeated. Further, it was not until after the second time Officer Floyd read him the warnings that Licensee asserted that he did not understand English well. After having the warnings translated, Licensee asked the translator what he should do. Clearly, Licensee "demonstrate[d] through his overall conduct a general unwillingness to submit to testing." *Walkden*, 103 A.3d at 440. Because Officer Floyd testified that Licensee did not make an unqualified, unequivocal assent to chemical testing, PennDOT proved Licensee refused chemical testing. *Factor*; *see also Lanthier v. Dep't of Transp., Bureau of Driver Licensing*, 22 A.3d 346 (Pa. Cmwlth. 2011) (where the licensee contended at trial that she did not make a knowing and conscious refusal because she could not hear the trooper read her the warnings, this Court concluded that the trooper's testimony that he spoke with the licensee merely minutes before

---

[8] Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i).

requesting she submit to chemical testing, that he requested the licensee submit to chemical testing three times (twice in the ambulance and once at the hospital), and that he interpreted licensee's failure to respond as a refusal, was sufficient for PennDOT to prove the licensee refused chemical testing).[9]

The Dissent relies upon *Solomon v. Department of Transportation, Bureau of Driver Licensing*, 966 A.2d 640 (Pa. Cmwlth. 2009), for its conclusion that PennDOT failed to prove an explicit refusal to take the test. In *Solomon*, when the police officer asked the licensee if he would submit to a chemical test, the licensee responded "go f*** yourself, and do what you've got to do." *Id*. at 641. The police officer deemed that to be a refusal.

> The *Solomon* Court held:
>
> Although [the licensee's] expletives were inappropriate, his response as a whole was certainly ambiguous and not an explicit refusal.[10] [**The licensee's**] **response could have been fairly taken to mean go ahead with the chemical test**. The officer should have made an attempt at that point to confirm whether [the licensee] would submit to testing. Instead, the officer escorted him out of the room and immediately deemed [it] a refusal. This fact further illustrates PennDOT's failure to prove that Solomon was offered "a meaningful opportunity to comply." *See Petrocsko* [*v. Dep't of Transp., Bureau of Driver Licensing*, 745 A.2d 714, 716 (Pa. Cmwlth. 2000)]. Accordingly, the trial court did not err in holding that PennDOT failed to prove that [the licensee] refused chemical testing.

*Solomon*, 966 A.2d at 643 (emphasis added).

---

[9] In *Lanthier*, this Court concluded that the licensee had the burden to prove that she did not make a knowing and conscious refusal. The *Lanthier* Court, however, noted that had PennDOT been required to prove that licensee refused testing, it had sustained that burden as well.

[10] "[A]n explicit refusal is not required to find a licensee refused to consent to chemical testing[.]" *Factor*, 199 A.3d at 497.

6

Here, after Officer Floyd read the warnings to Licensee, not once, but twice, Licensee then requested a translator. Officer Floyd testified that after the translator repeated the warnings, "[Licensee] said to [the translator], what do I do? . . . I asked her, I said what did he just tell you? And she said that he was asking her what to do." R.R. at 25a. The trial court determined: "This was the functional equivalent of a motorist asking any third person in the room, perhaps a friend or spouse, what they [sic] thought the motorist should do." R.R. at 65a (Trial Court Op. at 3). Clearly, considering Licensee's overall conduct, as we must, after communicating in English from the time of the initial stop, up to and including, until after the warnings were read to Licensee a second time, Licensee's response could not "have been fairly taken to mean go ahead with the chemical test." *Solomon*, 966 A.2d at 643. Thus, *Solomon* is inapposite and Officer Floyd was not required to make an attempt at that point to confirm whether Licensee would submit to testing.

Notwithstanding, the Dissent states: "the trial court held that Licensee's conduct did not constitute a refusal. Stated another way, Licensee's statement to the translator was 'certainly ambiguous and not an explicit refusal.' *Solomon*, 966 A.2d at 643." *Hanna v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth. No. 1772 C.D. 2019, filed April 19, 2021) (Leavitt, P.J., dissenting), slip op. at 4.

On the record, the trial court stated:

> **Where I am sitting at the moment** is there was no request to submit to the blood test. And if you arrange for an interpreter and someone improvidently says to that person, **I need help**, we still haven't gotten to the point where anybody was requested to do anything. I may be completely wrong. So if you would like to file a brief, do so within 7 days, and, Mr. Wagner, you may do the same.

R.R. at 35a (emphasis added). However, in its opinion, after having the benefit of the transcript, the trial court opined: "It is true that, at the end of the translation

7

[**Licensee**] **asked the translator what he should do**. This was the functional equivalent of a motorist asking any third person in the room, perhaps [a] friend or spouse, what they [sic] thought the motorist should do." R.R. at 65a (emphasis added). Thus, the trial court did not find an ambiguity in Licensee's statement. Accordingly, *Solomon* does not control.

The Dissent maintains that because

[t]he trial court went on to compare Licensee's request to "asking any third person in the room" for advice, [R.R. at 65a], which the [trial] court concluded did not run afoul of Form DL-26's prohibition on asking the police officer for the right to seek advice[, t]he trial court did not retreat from its observation at the hearing that Licensee never refused to submit to chemical testing.

*Hanna*, slip op. at 4 n.5.

Form DL-26, paragraph 4 states:

**You have no right to speak with** an attorney or **anyone else before deciding whether to submit to testing**. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

R.R. at 46a (emphasis added). After being read Form DL-26 three times, and having the above-quoted portion repeated a fourth time, Licensee asked the translator what he should do. There is nothing ambiguous about that statement. Accordingly, there is no doubt that Licensee's statement was not "'an unqualified, unequivocal assent' to submit to testing[,]" and therefore, it "constitute[d] a refusal to do so." *McKenna*, 72 A.3d at 298 (quoting *Renwick*, 669 A.2d at 938).

Once PennDOT proved that Licensee had refused chemical testing, "the burden shift[ed] to [] [L]icensee to prove []he was physically incapable of performing the test or that [his] refusal was not knowing and conscious." *Park*, 178

8

A.3d at 280. Since Licensee did not appear at the hearing before the trial court, there was no record evidence that his refusal was not knowing and conscious. As Licensee did not meet his burden of proving his refusal was not knowing and conscious, the trial court erred by sustaining Licensee's appeal and rescinding Licensee's license suspension.

For all of the above reasons, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Isaac Hanna                         :
                                    :
               v.                  :
                                    :
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing,        :    No. 1772 C.D. 2019
                    Appellant    :

## O R D E R

AND NOW, this 19th day of April, 2021, the Cumberland County Common Pleas Court's November 19, 2019 order is reversed.

                                    _____
                                    ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Isaac Hanna | : | |
| | : | |
| v. | : | No. 1772 C.D. 2019 |
| | : | Submitted: June 12, 2020 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                                         FILED: April 19, 2021

Respectfully, I dissent. The Cumberland County Court of Common Pleas (trial court) held that Isaac Hanna's (Licensee) request for help, as reported by the translator, was not an explicit refusal to consent to chemical testing. Under Pennsylvania law, Officer Kimberly Floyd was required to offer Licensee a meaningful opportunity to consent. Given the ambiguity surrounding Licensee's statement to a translator, Officer Floyd should have attempted to confirm that Licensee would submit to testing before ending the encounter. I would affirm the trial court.

To suspend a licensee's operating privilege under Section 1547 of the Vehicle Code, 75 Pa. C.S. §1547,[1] the Department of Transportation, Bureau of Driver Licensing (PennDOT) must prove that the licensee:

---

[1] Section 1547, commonly referred to as the Implied Consent Law, reads, in pertinent part, as follows:

(1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that a refusal might result in a license suspension.

*Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999). This Court has explained that PennDOT bears "the burden of showing that the licensee was offered a meaningful opportunity to comply with [Section] 1547." *Petrocsko v. Department of Transportation, Bureau of Driver Licensing*, 745 A.2d 714, 716 (Pa. Cmwlth. 2000) (quotation omitted). Further, PennDOT must establish that the licensee unequivocally refused to assent to chemical testing. There is no room for ambiguity.

---

(a) General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock).

(b) Civil penalties for refusal.--

(1) If any person placed under arrest for a violation of section 3802 [(relating to driving under influence of alcohol or controlled substance)] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

* * *

75 Pa. C.S. §1547.

MHL-2

*Solomon v. Department of Transportation, Bureau of Driver Licensing*, 966 A.2d 640 (Pa. Cmwlth. 2009), is instructive on these points. In that case, the arresting officer asked the licensee to submit to chemical testing. The licensee responded with expletives and told the officer to "do what you've got to do." *Id.* at 641. The trial court held that PennDOT did not prove that the licensee had refused chemical testing, and we affirmed. We reasoned as follows:

> Although Solomon's expletives were inappropriate, *his response as a whole was certainly ambiguous and not an explicit refusal.* Solomon's response could have been fairly taken to mean go ahead with the chemical test. *The officer should have made an attempt at that point to confirm whether Solomon would submit to testing.* Instead, the officer escorted him out of the room and immediately deemed a refusal. This fact further illustrates PennDOT's failure to prove that Solomon was offered "a meaningful opportunity to comply." Accordingly, the trial court did not err in holding that PennDOT failed to prove that Solomon refused chemical testing.

*Id.* at 643 (emphasis added) (citation omitted).

Here, Officer Floyd used a translator to read the Form DL-26 to Licensee. According to Officer Floyd, the translator stated that Licensee "asked her for help" and "asked her what to do."[2] Notes of Testimony, 9/26/2019, at 8 (N.T. __); Reproduced Record at 21a (R.R. __). Officer Floyd considered the translator's report of Licensee's statement to violate paragraph 4 of PennDOT's Form DL-26.[3]

---

[2] Licensee objected to Officer Floyd's testimony about what the translator said as hearsay, but the trial court overruled the objection.

[3] Paragraph 4 states:

> You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

Officer Floyd, who does not speak Arabic, had no personal knowledge of Licensee's actual words to the translator or their context. Licensee's request for help could have been related to anything: a request for a different translation or dialect.

At no point did Officer Floyd testify that the translator stated that Licensee requested to speak to an attorney or to anyone else.[4] The second sentence of paragraph 4 of Form DL-26 warns that where the licensee makes a request to speak to another person, he "will have refused the test." R.R. 46a. However, the majority relies on the first sentence of paragraph 4, and that sentence does not convey a warning. It states a legal fact. Because Licensee did not ask the translator if he could speak to another person, the trial court held that Licensee's conduct did not constitute a refusal. Stated another way, Licensee's statement to the translator was "certainly ambiguous and not an explicit refusal." *Solomon*, 966 A.2d at 643.

On these facts, I agree with the trial court that Licensee's request for help was not an explicit refusal. It was ambiguous, as the trial court observed:

> Where I am sitting at the moment is there was no [refusal] to submit to the blood test. And if you arrange for an interpreter and someone improvidently says to that person, I need help, we still haven't gotten to the point where anybody [refused] to do anything.

N.T. 26; R.R. 39a.[5]

---

R.R. 46a.

[4] Specifically, the trial court explained that Licensee's request for help did not violate paragraph 4 of Form DL-26 because "[Licensee] did not request to speak to an attorney. Nor did he make a request to the officer to speak to anyone else after being provided the warnings. Finally, there is no evidence that he remained silent. In short, none of the enumerated triggers for a refusal occurred." Trial Court Op. at 2; R.R. 64a.

[5] The majority suggests that after the trial court had the benefit of the transcript, it found no ambiguity in Licensee's conduct. I disagree. The majority correctly points out that, in its opinion, the trial court acknowledged that Licensee "asked the translator what he should do." Trial Court

*Solomon* teaches that where an officer is unsure of a licensee's intent to consent to chemical testing, the officer should confirm whether the motorist will submit to chemical testing. *Solomon*, 966 A.2d at 643. Guaranteeing the motorist a meaningful opportunity to comply requires nothing less.[6] In light of the ambiguity surrounding Licensee's statement to the translator, I agree with the trial court that Officer Floyd should have asked Licensee, either directly or through the translator, to submit to testing. At that point, anything less than Licensee's unequivocal assent, even silence, would have been a refusal.

The trial court reviewed Licensee's overall conduct, as described by Officer Floyd. Based on the trial court's findings, I conclude that this case is governed by *Solomon* and that PennDOT did not prove that Licensee explicitly refused to comply with Officer Floyd's request for chemical testing. Thus, I would affirm.

_____
MARY HANNAH LEAVITT, President Judge

---

Op. at 3; R.R. 65a. However, the context of this statement is important. The trial court went on to compare Licensee's request to "asking any third person in the room" for advice, *id.*, which the court concluded did not run afoul of Form DL-26's prohibition on asking the police officer for the right to seek advice. The trial court did not retreat from its observation at the hearing that Licensee never refused to submit to chemical testing.

[6] The majority reads *Solomon* too narrowly. It does not stand for the proposition that, to overcome a deemed refusal, a licensee must demonstrate that the words he uttered at the scene could have been interpreted as an assent to testing. The point of *Solomon* is that the officer must ensure that there is no ambiguity in the licensee's conduct before deeming it a refusal. This is part and parcel of ensuring the licensee was afforded a meaningful opportunity to comply with the request for chemical testing.