Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant *v.* Kathleen Ferrara, Appellee.

550

Submitted on briefs March 14, 1985, to Judges DOYLE and PALLADINO and Senior Judge KALISH, sitting as a panel of three.

*Harold H. Cramer,* Assistant Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellant.

*S. Michael Streib,* for appellee.

OPINION BY JUDGE DOYLE, May 30, 1985:

The Bureau of Traffic Safety of the Department of Transportation (Appellant) seeks review of an order of the Court of Common Pleas of Allegheny County which sustained the license suspension appeal of Kathleen Ferrara (Appellee).

On June 3, 1981, Appellee was stopped by officers of the Ross Township Police Department after she was observed driving a vehicle without tail lights and failing to negotiate a turn well. The officers making the traffic stop testified that there was an odor of alcohol on her breath, and that upon being asked to leave her vehicle, she had difficulty maintaining her balance and walking. There is much dispute concerning exactly what happened after Appellee was taken to the police station, but as the trial court found in favor of Appellee, we must accept her version as true. *Department of Transportation, Bureau of Traffic Safety v. Tillitt,* 49 Pa. Commonwealth Ct. 343, 345, 411 A.2d 276, 277 (1980).

Appellee testified, in relevant part:

A. . . . . We went into a room where the machine was. They had a table with a couple chairs there. They dumped my purse and they looked through everything, they threw everything back in the purse and said to me, "Do you want to take a blood test or a breathalizer test?" I said, "Can't I call somebody first to tell me what to do," because I had never been in any situation like that before.

Q. Have you ever been arrested?

A. I have never been stopped, nothing but a parking ticket.

Q. Were you upset?

A. Yes.

Q. How were you feeling?

A. Crying and very scared, just—he had me very upset, he was ordering me around a lot.

Q. What happened after you said could you call somebody first?

A. He told me that I could. I was very cooperative. He asked me to fill out the papers. I started to fill out the papers. He took me down to that cell and made me sit in that dirty cell, and brought me upstairs and told me to call someone and find a ride home, which was not my husband.

Q. Who told you that?

A. Sgt. Freedman told me to find a ride home, in those words.

Q. Then what happened?

A. I said, "Why can't I take my own car home? My husband is going to be very upset. Why can't I take my own car home." He said, "You can't drive home, your husband will have to pick you up." I said, "If you want me to take the breathalizer I will take it." He said, "It's too late. I will send you a summons." He did not say for what, so I assumed it was for the tail lights.

An operator's driving privileges may be suspended for refusal to submit to a breathalizer test where the Department of Transportation proves that the driver involved: (1) was placed under arrest for driving while under the influence of alcohol, and the arresting officer had reasonable grounds to believe the driver was intoxicated; (2) was asked to submit to a breathalizer test; (3) refused to do so; and (4) was warned that his license would be revoked if he refused to take the test. *Phillips v. Commonwealth*, 84 Pa. Commonwealth Ct. 217, 219, 478 A.2d 958, 959-60 (1984).

In this case, only the third element of the above test is in dispute. The trial court found as a fact that Appellee had been warned that her license would be suspended if she refused to take the test; he also indicated on the record his belief that Appellee's response to the officer's demand did constitute a refusal. In his decision,[1] however, he indicated that the refusal was made during a period of fear, agitation and confusion, and that once Appellee realized what the consequences would be, she readily agreed to take the test. He concluded that Appellant had failed to establish a refusal by the Appellee to submit to the test. *Tillitt* was cited as the controlling case.

Our scope of review is limited to determining whether the lower court's findings are supported by competent evidence, whether an error of law has been committed, and whether the lower court's decision constitutes a manifest abuse of discretion. *Bruno v. Department of Transportation,* 54 Pa. Commonwealth Ct. 353, 422 A.2d 217 (1980).

In *Tillitt,* the arrestee was asked whether he wanted to take a breathalizer test, and in response he vacillated several times between "yes" and "no." Upon being told by the officers, "We're not here to play games," he asked if he could call his father and was permitted to do so. 49 Pa. Commonwealth Ct. at 345, 411 A.2d at 277. His father advised him to request the test again and told him he would leave for the station immediately. He arrived at the station within

---

[1] The trial court did not issue a formal opinion in this matter. The reasons for his decision appear partly in the record and partly as notations in his order. Exactly which testimony he found credible and which he did not is thus not entirely clear. Although he accepted as true a great deal of the officers' story, insofar as it conflicted with Appellee's version, he appeared to give her the benefit of the doubt.

four minutes of the call and requested that his son be allowed to take the test, but the officers refused. *Id.* Under these facts, the Court concluded that the arrestee's response was not *substantially* short of an unqualified, unequivocal assent, and consequently did not constitute a refusal. *Id.* at 346, 411 A.2d at 277.

Appellant argues that *Tillitt* does not govern the instant case because it applies only to a momentary refusal, and that subsequent decisions of this Court indicate that even 15 or 20 minutes between an unequivocal refusal and a subsequent change of heart is too long a delay. This is a fairly accurate statement of the law. *See Miller Appeal,* 79 Pa. Commonwealth Ct. 648, 470 A.2d 213 (1984); *Department of Transportation, Bureau of Traffic Safety v. Wroblewski,* 65 Pa. Commonwealth Ct. 333, 442 A.2d 407 (1982). Police officers are not required to spend time either cajoling an arrestee or waiting for him to change his mind. *Miller,* 79 Pa Commonwealth Ct. at 650, 470 A.2d at 214.

Given the fine line which has been drawn by these cases, there arises a distinct problem with the present case. The record is devoid of testimony concerning the exact length of time which passed between Appellee's request to call someone and her request to take the test. The trial court drew an inference that it was a brief period, based undoubtedly on the parties' mutual testimony that Appellee was originally stopped at 10:55 p.m. and was released shortly after midnight. However, in light of the parties' also mutual testimony that Appellee was detained in a cell for some period of time, it seems unlikely that less than 15 minutes elapsed.

Nevertheless, we believe that the trial court's decision must be upheld on a different ground. Appellee's testimony indicates that she responded to the

officer's request not with an unqualified refusal, but rather with her own request that she be allowed to call someone to tell her what to do. By "someone" she presumably was referring to an attorney. As the trial court correctly noted, numerous decisions of this Court have established that a request for an attorney in response to an officer's request that an arrestee take a breathalizer test may be taken as a refusal. *King v. Department of Transportation, Bureau of Traffic Safety*, 81 Pa. Commonwealth Ct. 177, 472 A.2d 1196 (1984); *Weitzel Appeal*, 41 Pa. Commonwealth Ct. 235, 400 A.2d 646 (1979).[2] We note, however, that a recent decision of this Court holds that in order for this rule to apply, *there must be a response to the arrestee's request.* "[A] refusal cannot be implied from a mere question." *Department of Transportation, Bureau of Traffic Safety v. Doherty*, 88 Pa. Commonwealth Ct. 482, 490 A.2d 481 (1985).

We believe that *Doherty* applies to the facts at bar and will thus interpret it to mean that a request for consultation must be responded to *negatively* before a refusal can be established. In this case, Appellee was told that she *could* call someone to tell her what to do. Rather than immediately being allowed to make a telephone call, she was then made to fill out forms and left to sit in a cell for some indeterminate amount of time. Although the officer involved was under no duty to allow Appellee to consult with anyone, by

---

[2] In addition to *King* and *Weitzel*, Appellant relies on *Department of Transportation, Bureau of Traffic Safety v. Korchak*, 74 Pa. Commonwealth Ct. 465, 459 A.2d 1295 (1983). We note that this case was recently reversed by the Pennsylvania Supreme Court, 506 Pa. 52, 483 A.2d 1360 (1984). Although the rule of law relied upon by Appellant was not disturbed, the Court stated, "The trial court found from the testimony that appellant's request for an attorney was in response to the *Miranda* warnings and not in response to a request to take a breathalizer test." *Id.* at 58, 483 A.2d at 1363.

556

telling her that she could call someone, he *put* himself under a duty to either allow her to do so or to inform her that he had changed his mind. We reach this conclusion out of an awareness that allowing an officer to treat a request for consultation as an unqualified refusal, without at least informing the arrestee that she has no right to such a consultation, would create a great potential for unfair manipulation of arrestees who may be under legitimate confusion concerning their rights.[3]

We will affirm the trial court.

ORDER

Now, May 30, 1985, the Order of the Court of Common Pleas of Allegheny County, No. SA873 of 1981, dated September 14, 1981, is hereby affirmed.

Judge PALLADINO dissents.

---

[3] This decision makes it unnecessary for us to address Appellee's contention that Appellant is estopped from pursuing this appeal by reason of inordinate delay (more than two years) in filing its brief.