552 A.2d 760

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant *v.* C. Eugene Elliott, Appellee.

Submitted on briefs September 7, 1988, to Judges BARRY and SMITH, and Senior Judge NARICK, sitting as a panel of three.

*Christopher J. Clements,* Assistant Counsel, with him, *Harold H. Cramer,* Assistant Chief Counsel, and *John L. Heaton,* Chief Counsel, for appellant.

*Paul D. Zavarella,* with him, *Louis W. Emmi,* for appellee.

OPINION BY SENIOR JUDGE NARICK, January 12, 1989:

The Court of Common Pleas of Westmoreland County, after a hearing *de novo,* sustained the appeal of C. Eugene Elliott (Elliott) and reversed the one year suspension of Elliott's operator's license by the Department of Transportation (Department) pursuant to Section 1547(b)(1) of the Vehicle Code (Code)[1] (refusal to submit to an intoxilyzer test). The Department appeals this order by the trial court. We reverse.

On June 13, 1987, Pennsylvania State Trooper Marcina Robinson stopped Elliott for travelling at an excessive rate of speed. Trooper Robinson testified that

---

[1] 75 Pa. C. S. §1547(b)(1).

upon stopping the Elliott vehicle, she detected the odor of an intoxicating beverage on Elliott's breath and that Elliott's eyes appeared red and glassy. For this reason, Trooper Robinson had Elliott perform certain field sobriety tests. At the conclusion of these tests, Trooper Robinson placed Elliott under arrest and gave him his *Miranda*[2] warning. Elliott was then transported to the Kiski Valley State Police Barracks. At the state police barracks, Trooper Daniel T. Ferrick, a certified intoxilyzer operator, advised Elliott of the implied consent law and that his refusal to submit to testing would result in the suspension of his license for a one year period. Trooper Ferrick then asked Elliott if he had any questions and Elliott indicated he did not. Elliott was then requested by Trooper Ferrick to submit to an intoxilyzer test. Elliott testified that when asked to submit to the intoxilyzer test, he told the officer he did not want to take the test and then asked if he could call his attorney.[3]

The essential issue presented by the Department on appeal is whether the state police troopers had a duty to advise Elliott that he did not have a right to an attorney for purposes of submission to an intoxilyzer test when Elliott never expressed this confusion to the officers. Under the circumstances herein, we must answer this question in the negative.

In license suspension cases, our scope of review is limited to determining whether the trial court's findings are supported by competent evidence, whether an error of law has been committed, and whether the trial court's decision constitutes a manifest abuse of discre-

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966). These warnings, of course, include the right to an attorney during questioning and the right to remain silent.

[3] *See* Notes of Testimony (N.T.) from February 26, 1988 hearing at page 12.

tion. *Im v. Department of Transportation,* 108 Pa. Commonwealth Ct. 206, 529 A.2d 94 (1987).

The trial court, in sustaining Elliott's appeal, stated in its opinion:

> At the State Police barracks, another trooper, Trooper Daniel T. Ferrick, the intoxilyzer operator, met with the defendant [Elliott]. Upon meeting with defendant, Trooper Ferrick advised the defendant of the implied consent law. He told the defendant why he was there and reviewed the implied consent law with the defendant; he asked the defendant if he had any questions; and he asked him if he understood. The defendant responded that he did not have any questions and that he understood the explanation of the implied consent law. The trooper also advised the defendant that he did not have to take the test, that it was his option, but if that [sic] he refused to take the test, that his license would be suspended for a period of one (1) year. The trooper asked the defendant if he understood this explanation and the defendant indicated that he did. The trooper then asked the defendant if he was willing to submit to the breath test. The defendant responded 'no, I will not take it', and then immediately thereafter asked to speak to an attorney. At this time, Trooper Ferrick did not explain to Mr. Elliott that the Miranda warnings that he had previously received concerning his right to an attorney did not apply to the requested intoxilyzer test.

Trial court opinion at 1-2. The trial court concluded that under the circumstances above, it was incumbent upon Trooper Ferrick to advise Elliott that he did not have a right to an attorney for purposes of submission to an intoxilyzer test.

In support of its position, the trial court relied on *Bureau of Traffic Safety v. Ferrara,* 89 Pa. Commonwealth Ct. 549, 493 A.2d 154 (1985) whereby the Department's suspension of the arrestee's license was reversed. In *Ferrara,* the arrestee responded to a request for chemical testing by asking whether she could call someone first. The officer replied that she could, but then asked her to complete some papers and shortly thereafter placed her in a cell. The arrestee was never given the opportunity to make the telephone call nor was she again requested to submit to chemical testing. This Court reasoned that although the officer did not have a duty to allow the arrestee to consult with anyone, by telling her that she could make a telephone call he placed himself under a duty to either allow her to make the call or to inform her that he had changed his mind. Due to the officer's misleading statements in *Ferrara,* this Court concluded that no refusal ever occurred.

However, the trial court's reliance on *Ferrara* is misplaced. In the matter herein, the trial court found that: (1) Elliott, when asked if he understood the implied consent law, responded in the affirmative, (2) when asked to submit to an intoxilyzer test, Elliott refused, and (3) immediately *after* his refusal, Elliott asked if he could consult with an attorney. It is also important to note that the trial court did not make *any* findings as to whether Elliott verbalized to the officers his confusion as to whether the *Miranda* right applied to the officers' request to submit to an intoxilyzer test.

We believe the circumstances herein are similar to those in *Department of Transportation v. O'Connell,* 99 Pa. Commonwealth Ct. 410, 513 A.2d 1083 (1986), *petition for allowance of appeal granted* 515 Pa. 587, 527 A.2d 546 (1987). In *O'Connell,* the arrestee after being given his *Miranda* warnings was transported to the police station. At the police station, the arrestee was ad-

vised of the consequences of a refusal to submit to a breathalyzer test. When asked to submit to the breathalyzer test, the arrestee refused. At the hearing before the trial court, the arrestee testified that his refusal was based on the fact that he had not been permitted to contact an attorney. This Court reversed the trial court and upheld the Department's suspension specifically noting that there was no evidence in the record to support the trial court's finding that the arrestee *told* the officer what his grounds for refusal were. *O'Connell*, 99 Pa. Commonwealth Ct. at 416, 513 A.2d at 1086.

In the matter now before this Court, we believe two important facts warrant reversal. Firstly, when asked to submit to a breathalyzer, Elliott replied in the negative and then asked to speak with his attorney.[4] Secondly, there is absolutely no evidence in the record, nor did the trial court so find, that Elliott ever verbalized to Troopers Robinson or Ferrick that his refusal was based upon his belief that the *Miranda* warnings applied to the request to submit to an intoxilyzer test.

---

[4] The only testimony of record as to Officer Ferrick's response to Elliott's request to call his attorney is the following testimony by Elliott, "Yes, I asked to call my attorney. But I was allowed to make one phone call and I didn't make that. The officer made it for somebody to come pick me up". *See* N.T. from February 26, 1988 hearing at page 12. However, because Elliott *first refused* to take the breathalyzer and then asked to speak to an attorney, Officer Ferrick's response is not relevant. *But see McFadden v. Commonwealth*, 108 Pa. Commonwealth Ct. 194, 529 A.2d 88 (1987) where arrestee responded to officer's request to submit to breathalyzer with an inquiry regarding whether he could consult someone before making a decision. In *McFadden*, this Court noted that because the officer consented to the request he did not have to advise the arrestee that the *Miranda* right to counsel did not apply to the breathalyzer test; but if he had *not* consented to the arrestee's request, he would have been required to do so.

For these reasons, we must reverse the·order of the trial court.

## ORDER

AND NOW, this 12th day of January 1989 the order of the Court of Common Pleas of Westmoreland County in the above-captioned matter is hereby ·reversed.

Judge MACPHAIL did not participate in the decision in this case.