IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas J. Hoover,                               :
                        Appellant               :
                                                :
        v.                                      :   No. 1527 C.D. 2018
                                                :   SUBMITTED: April 5, 2019
Commonwealth of Pennsylvania,                   :
Department of Transportation,                   :
Bureau of Driver Licensing                      :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                                         FILED: June 25, 2019

        Thomas J. Hoover (Licensee) appeals from the November 2, 2018 Order of

the Court of Common Pleas of Lawrence County (Trial Court) denying Licensee's

statutory appeal from the one-year suspension of his operating privilege imposed by

the Department of Transportation, Bureau of Driver Licensing (DOT), under Section

1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1)(i), commonly known as

the Implied Consent Law.[1]  For the reasons that follow, we affirm the Trial Court's

Order.

---

[1] Section 1547(b)(1)(i) of the Implied Consent Law states:

   If any person placed under arrest for a violation of [S]ection 3802 [of the Vehicle
   Code (relating to driving under the influence (DUI))] is requested to submit to
   chemical testing and refuses to do so, the testing shall not be conducted but upon
   notice by the police officer, [DOT] shall suspend the operating privilege of the
   person . . . for a period of 12 months.

75 Pa. C.S. § 1547(b)(1)(i).

## Background

On the evening of November 22, 2017, Officer Alfred DeCarbo was on patrol in Neshannock Township, Pennsylvania. At 9:53 p.m., Officer DeCarbo observed Licensee's vehicle traveling south on State Route 18 and crossing over the fog line several times. Using a Visual Average Speed Computer and Recorder (VASCAR) device, Officer DeCarbo clocked the vehicle traveling at 59.7 miles per hour in a 45 mile-per-hour zone.

Officer DeCarbo activated his emergency lights and executed a traffic stop. Licensee pulled his vehicle over to the berm but drove another one-quarter mile before coming to a complete stop. Licensee was the driver and sole occupant of the vehicle.

Officer DeCarbo requested Licensee's documentation. Licensee fumbled with his driver's license, and the officer had to ask again for his registration and insurance cards. Officer DeCarbo detected a strong odor of alcohol, even though Licensee was chewing gum. During the encounter, Officer DeCarbo noticed that Licensee was avoiding eye contact with him, instead averting his gaze and looking straight ahead at the windshield.

Officer DeCarbo asked Licensee if he had been drinking, to which Licensee replied, "No."[2] Officer DeCarbo asked Licensee to step out of the vehicle to conduct field sobriety tests. As Licensee exited the vehicle, Officer DeCarbo noticed that Licensee's eyes were watery and his face was red. Officer DeCarbo performed the horizontal-gaze nystagmus test, the walk-and-turn test, and the one-leg-stand test. Licensee was unable to successfully complete any of the tests.

---

[2] At the hearing before the Trial Court, Licensee admitted that he had consumed four "vodka and sodas" between 6:00 p.m. and 9:45 p.m. on the evening in question. Notes of Testimony (N.T.), 11/2/18, at 45-46.

Officer DeCarbo asked Licensee to take a preliminary breath test at the scene. Licensee made several attempts at performing the test. However, Officer DeCarbo was able to obtain only a partial breath sample, which revealed a blood alcohol content of 0.124. Officer DeCarbo informed Licensee that he was arresting him for DUI and transporting him to the hospital for a blood test.

Officer DeCarbo and Licensee arrived at the hospital at 10:16 p.m. Five minutes later, Officer DeCarbo read the implied consent warnings on DOT's DL-26B Form to Licensee. Licensee signed the form, indicating that he had been warned of the consequences of a chemical test refusal.

A laboratory technician entered the room to obtain a blood sample, and Licensee refused to submit to a blood test. Officer DeCarbo gave Licensee three opportunities to provide a blood sample, but he refused each time. Licensee signed the hospital's refusal form at 10:29 p.m.

After the refusals, Licensee was released to his wife, who was waiting in the hospital lobby. Officer DeCarbo then left the hospital. Thereafter, Licensee changed his mind and asked a hospital employee if he could take the blood test. Another officer contacted Officer DeCarbo to inquire if Licensee could take the test. At that point, Officer DeCarbo was already on patrol and declined to return to the hospital to offer Licensee a fourth opportunity to consent to a blood test.

DOT issued a Notice of Suspension to Licensee for his refusal to submit to chemical testing under the Implied Consent Law. Licensee appealed to the Trial Court, which held an evidentiary hearing on November 2, 2018. Both Officer DeCarbo and Licensee testified at the hearing. Following the hearing, on November

6, 2018, the Trial Court denied Licensee's statutory appeal.[3]  Licensee now appeals to this Court.[4]

## Issues

(1)  Did the Trial Court abuse its discretion in limiting Licensee's cross-examination of Officer DeCarbo regarding whether he had reasonable grounds to stop Licensee's vehicle?

(2)  Did the Trial Court err in concluding that Officer DeCarbo did not abuse his discretion in not returning to the hospital from patrol to offer Licensee a fourth opportunity to submit to a blood test?

## Analysis

### 1.  Limitation of Licensee's Cross-Examination of Officer DeCarbo

First, Licensee asserts that the Trial Court abused its discretion in limiting his cross-examination of Officer DeCarbo regarding the reasonableness of the traffic stop.   Specifically, Licensee contends that he should have been permitted to extensively cross-examine Officer DeCarbo regarding the accuracy of the VASCAR device in order to show that the officer lacked reasonable grounds to effectuate the traffic stop.  We disagree.

To support the suspension of a licensee's operating privilege under the Implied Consent Law, DOT must prove that the licensee:  (1) was arrested for DUI

---

[3] Following Licensee's appeal to this Court, he filed with the Trial Court an Application for Stay, seeking to stay the one-year suspension of his operating privilege until resolution of the appeal.  After hearing argument, the Trial Court granted the Application for Stay on December 3, 2018.

[4] In an appeal arising from a suspension of a licensee's operating privilege, this Court's scope of review is limited to determining whether the Trial Court's decision is supported by substantial evidence, whether there has been an error of law, or whether the Trial Court manifestly abused its discretion. *Pappas v. Dep't of Transp., Bureau of Driver Licensing*, 669 A.2d 504, 507 n.4 (Pa. Cmwlth. 1996).

4

by an officer who had reasonable grounds to believe that the licensee was operating a vehicle while under the influence of alcohol in violation of Section 3802 of the Vehicle Code; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that his refusal might result in a license suspension and would result in enhanced penalties if he were later convicted of DUI. *Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1035 (Pa. Cmwlth. 2018) (*en banc*). Whether reasonable grounds existed is a question of law fully reviewable by this Court. *Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 436 (Pa. Cmwlth. 2014).

The crux of Licensee's contention on appeal is that a police officer must have reasonable grounds *prior to* stopping a vehicle in order to justify a request to submit to chemical testing. Licensee claims that "DOT must present evidence *supporting the reasonable grounds for the traffic stop* to support a license suspension." Licensee's Br. at 32 (emphasis added); *see* N.T., 11/2/18, at 24-25. That is an incorrect statement of the law.

It is well settled that "[a]n officer may acquire reasonable grounds to believe that a licensee was driving under the influence of alcohol *at any time* during the course of interaction between the officer and the licensee." *Kachurak v. Dep't of Transp., Bureau of Driver Licensing*, 913 A.2d 982, 985 (Pa. Cmwlth. 2006) (emphasis in original); *see Osselburn v. Dep't of Transp., Bureau of Driver Licensing*, 970 A.2d 534, 538-39 (Pa. Cmwlth. 2009) ("An officer may acquire reasonable grounds to believe the person was driving the vehicle while under the influence of alcohol *at any time during the traffic stop . . . .*") (emphasis added); *Magill v. Com.*, 522 A.2d 172, 173 (Pa. Cmwlth. 1987) ("[The licensee] confuses reasonable grounds to believe that he was driving under the influence of alcohol with

5

reasonable grounds to stop his vehicle. *A police officer need only have the former in order to require [the licensee] to submit to [a chemical] test."*) (emphasis added).

Our Supreme Court has held that "[r]easonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999). "While there is no set list of behaviors or conditions that a person must exhibit for an officer to have reasonable grounds for making an arrest, case law has provided examples of what has been accepted as reasonable grounds, such as: staggering, swaying, falling down, belligerent or uncooperative behavior, slurred speech, and the odor of alcohol." *Sisinni v. Dep't of Transp., Bureau of Driver Licensing*, 31 A.3d 1254, 1258 (Pa. Cmwlth. 2011); *see Magill*, 522 A.2d at 174 (finding that the arresting officer had reasonable grounds where, after stopping the vehicle, the officer observed that the licensee had difficulty walking, slurred his speech, could not perform sobriety tests, and smelled of alcohol).

Here, Officer DeCarbo testified that, during his interaction with Licensee, he observed the following indicia of intoxication: (1) Licensee's vehicle crossed the fog line several times; (2) Licensee fumbled with his documentation; (3) a strong odor of alcohol emanated from Licensee's vehicle; (4) Licensee's eyes were watery; (5) his face was red; (6) he failed three field sobriety tests; and (7) the preliminary breath test showed a blood alcohol content of 0.124. N.T., 11/2/18, at 4-5, 7-10. The Trial Court expressly credited Officer DeCarbo's testimony. Trial Ct. Op., 12/21/18, at 2; *see Millili v. Dep't of Transp., Bureau of Driver Licensing*, 745 A.2d 111, 113 (Pa. Cmwlth. 2000) (*en banc*) (in a license suspension proceeding,

6

determinations as to the credibility and weight of the evidence are solely for the trial court as factfinder). Viewing these objective signs of intoxication as a whole, we conclude that Officer DeCarbo had reasonable grounds to believe that Licensee had operated a vehicle while under the influence of alcohol.

Licensee argues that he should have been permitted to cross-examine Officer DeCarbo extensively about the accuracy of the VASCAR device, which indicated that he was driving over the speed limit. However, whether Licensee actually committed a traffic violation before the stop is irrelevant to the reasonable grounds inquiry. "Both the Supreme Court and this Court consistently have held that . . . *the legality of the underlying traffic stop [is] not relevant to an appeal of a civil license suspension matter* based on a licensee's refusal to submit to a chemical test in accordance with the Implied Consent Law." *Regula v. Dep't of Transp., Bureau of Driver Licensing*, 146 A.3d 836, 843 (Pa. Cmwlth. 2016) (emphasis added). A police officer need not even observe a licensee operating a vehicle — let alone observe the licensee commit a traffic violation — to have reasonable grounds to arrest him for DUI. *See Walkden*, 103 A.3d at 437. "[F]or 'reasonable grounds' to exist, the police officer obviously need not be correct in his belief that the motorist had been driving while intoxicated. [The relevant inquiry is] the [officer's] authority to request a person to submit to a chemical test and *not the admission into evidence of the result of such a test*." *Dep't of Transp., Bureau of Traffic Safety v. Dreisbach*, 363 A.2d 870, 872 (Pa. Cmwlth. 1976).

As explained above, regardless of whether Licensee was speeding, Officer DeCarbo's personal observations of Licensee's behavior and appearance during the traffic stop amply supported his reasonable belief that Licensee had operated his vehicle while under the influence of alcohol.

Licensee also argues that the Trial Court's limitation of his cross-examination of Officer DeCarbo violated his Sixth Amendment right to confront witnesses against him. We reject this claim. "This Court has repeatedly ruled that the Sixth Amendment right to confront and cross-examine witnesses does not apply to license suspension proceedings, . . . as they are not penal in nature, but rather civil proceedings." *Stenhach v. Dep't of Transp., Bureau of Driver Licensing*, 651 A.2d 218, 220 (Pa. Cmwlth. 1994); *see Yi v. Dep't of Transp., Bureau of Driver Licensing*, 642 A.2d 625, 628 (Pa. Cmwlth. 1994).

Therefore, we conclude that the Trial Court did not abuse its discretion in limiting Licensee's cross-examination of Officer DeCarbo regarding the accuracy of the VASCAR device.

### 2. Officer DeCarbo's Failure to Return to Hospital

Next, Licensee argues that the Trial Court erred in concluding that Officer DeCarbo was not required to return to the hospital from patrol to allow Licensee to submit to a blood test, after he had refused the officer's three prior requests. We disagree.

It is well settled that "once a licensee refuses chemical testing, the refusal cannot be vitiated by a later assent." *Vora v. Dep't of Transp., Bureau of Driver Licensing*, 79 A.3d 743, 747 (Pa. Cmwlth. 2013). "Police officers are not required to spend time either cajoling [a licensee] or waiting for him to change his mind." *Dep't of Transp., Bureau of Traffic Safety v. Ferrara*, 493 A.2d 154, 156-57 (Pa. Cmwlth. 1985). "[E]ven 15 or 20 minutes between an unequivocal refusal and a subsequent change of heart is too long a delay." *Id.* at 156.

Licensee does not dispute that he refused Officer DeCarbo's three requests for a blood sample at the hospital, but claims that the officer should have offered him a

fourth opportunity after he changed his mind. In a similar case where a licensee changed her mind regarding consent to chemical testing, our Court explained:

> Here [the licensee] *admits to refusing [to submit to a chemical test] after she was informed of the consequences*; she did not vacillate. She *changed her mind* five minutes later. [The licensee] seeks to have us modify the rule that a subsequent consent does not vitiate a prior refusal to include a consideration of the length of time in which the change of mind occurred. This we have declined to do in the past, explaining that "police officers are not required to . . . spend time waiting to see if the [licensee] will ultimately change his [or her] mind." *Miller Appeal*, . . . 470 A.2d 213, 214 ([Pa. Cmwlth.] 1984).

*Cunningham v. Dep't of Transp.*, 525 A.2d 9, 10 (Pa. Cmwlth. 1987) (emphasis in original).

We conclude that because Licensee unequivocally refused Officer DeCarbo's three prior requests for a blood test, after being informed of the consequences of refusing, Officer DeCarbo had no obligation to return to the hospital from patrol to offer him a fourth opportunity. The Trial Court determined:

> This court provided significant opportunity for development of a record with regard to the issue of [Licensee's] late request to take the test. While Officer DeCarbo asked three times for consent to draw blood while present at the hospital, these additional opportunities did not obligate Officer DeCarbo to provide even further opportunities beyond those three, especially after the Officer had left the scene. [Licensee] testified he did not ask Officer DeCarbo while in the parking lot, even though he had the opportunity. Instead, his wife contacted a friend who knew another [o]fficer of the Neshannock Police Department. Officer DeCarbo was under no duty to allow [Licensee] to take a blood test after his initial refusal. Even if there was a duty to not be arbitrary and capricious, as [Licensee] argued at the hearing, [Officer DeCarbo's] refusal to return to the hospital while he was on patrol was not arbitrary and capricious.

Trial Ct. Op., 12/21/18, at 7. We find no error in this determination.

9

## **Conclusion**

Accordingly, we affirm the Trial Court's Order.


_____
ELLEN CEISLER, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas J. Hoover,                          :
                    Appellant             :
                                          :
        v.                                :  No. 1527 C.D. 2018
                                          :
Commonwealth of Pennsylvania,             :
Department of Transportation,             :
Bureau of Driver Licensing                :


# **O R D E R**


AND NOW, this 25th day of June, 2019, the Order of the Court of Common

Pleas of Lawrence County, dated November 2, 2018, is hereby AFFIRMED.


_____
ELLEN CEISLER, Judge