IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melanie Dawn Donnelly,           :
                    Appellant    :
                                 :
         v.                      :      No.  1290 C.D. 2021
                                 :      Submitted:  April 1, 2022
Commonwealth of Pennsylvania,    :
Department of Transportation,    :
Bureau of Driver Licensing       :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                         FILED:  May 13, 2022


Melanie Dawn Donnelly (Licensee) appeals from the August 20, 2021 order of the Court of Common Pleas of Adams County (trial court), which dismissed her appeal from the one-year suspension of her operating privilege that the Department of Transportation, Bureau of Driver Licensing (Department) imposed following her arrest for driving under the influence of alcohol (DUI) and refusal to submit to a blood test under 75 Pa.C.S. § 1547(b)(1)(i) of the Vehicle Code.  Licensee challenges the trial court's finding that she refused to submit to blood testing.  Upon review, we affirm.

## I.    Background and Procedural History

On January 28, 2021, police officer Shannon Hilliard (Officer Hilliard) of the Gettysburg Borough Police Department initiated a traffic stop of Licensee's vehicle

because of its expired registration. Original Record (O.R.), Item No. 17, Notes of Testimony (N.T.), 8/20/21, at 4-5. During the traffic stop, Officer Hilliard observed that Licensee had bloodshot, glassy eyes, and that the odor of alcohol was emanating from her breath. *Id.* at 5. Officer Hilliard directed Licensee out of her vehicle to perform field sobriety testing. *Id.* at 5-6. Licensee's poor performance on the tests caused Officer Hilliard to believe Licensee was intoxicated. *Id.* at 6. Officer Hilliard then asked Licensee for preliminary breath testing, but she did not provide an adequate breath sample to complete the test. *Id.* at 5-6. Ultimately, Officer Hilliard arrested Licensee for DUI and transported her to a hospital for blood testing. *Id.* For reasons that the parties dispute, Licensee did not submit to a voluntary blood test. Officer Hilliard obtained a search warrant for a blood sample. *Id.* at 8-10, 14-15.

On February 11, 2021, the Department mailed Licensee a notice stating that it was suspending her operating privilege for a period of one year due to her refusal to submit to the blood test. Licensee appealed the suspension to the trial court and filed a motion for supersedeas pending the outcome of the appeal. The trial court granted supersedeas and conducted a hearing on August 20, 2021, at which Licensee appeared with counsel. The Department presented the testimony of Officer Hilliard. Licensee testified on her own behalf.

Officer Hilliard testified that he read Licensee a DL-26B form at the hospital, which advised her that her operating privilege would be suspended if she refused to submit to a blood test. *Id.* at 5-8. Officer Hilliard testified that Licensee denied "on scene" that she had been drinking but stated at the hospital that she "was unsure how much alcohol was in her drink and afraid to submit to testing." *Id.* He explained that he treated Licensee's statement as a refusal to test. *Id.* at 14-15. Officer Hilliard did not recall Licensee making any further statements after asserting that she was

2

afraid to submit to testing. *Id.* at 14. Licensee did not attempt to consent to the blood test after learning that Officer Hilliard deemed her statement a refusal and would be seeking a search warrant. *Id.* at 15-16. Officer Hilliard added that he initialed the section of the DL-26B form indicating Licensee had declined to sign the form after refusing a test. *Id.* at 9-10, 16.

Licensee challenged Officer Hilliard's testimony, claiming that he never read her the DL-26B form. *Id.* at 19. Significantly, she testified on direct examination that she did not recall making the statement Officer Hilliard described, in which she indicated that she was unsure how much alcohol was in her drink, and that she was afraid to submit to testing. *Id.* at 20. Licensee testified that she stated, "I don't like having my blood drawn. Is there anything else I can do?" *Id.* Licensee's testimony changed during examination by the trial court, in that she conceded stating to Officer Hilliard that she was "afraid to have [her] blood drawn because [she] d[id]n't know how much alcohol was in [her] drink." *Id.* at 25. When the trial court asked Licensee why her testimony had changed, Licensee maintained that she did not recall "having any kind of conversation aside from the fact that [she] told him [she does]n't like having [her] blood drawn." *Id.*

At the conclusion of the hearing, the trial court announced it would dismiss Licensee's appeal and reinstate the suspension of her operating privilege. *Id.* at 28. In a subsequent opinion, the trial court found Officer Hilliard read Licensee the DL-26B form and gave her a meaningful opportunity to submit to blood testing, but that her statements and actions constituted a refusal to test. O.R., Item No. 18, Trial Ct. Op., 11/17/21, at 5. The trial court found Licensee did not provide an unqualified, unequivocal assent to testing. *Id.* In making these findings, the trial court explained that it deemed Licensee's testimony incredible, citing her claim that Officer Hilliard

3

did not read her the DL-26B form, which it rejected as illogical, and her inconsistent statements regarding why she was hesitant to submit to a blood test. *Id.* at 6. The trial court entered an order memorializing this decision on August 20, 2021. Licensee appealed,[1] and the trial court directed her to file a concise statement of errors complained of on appeal. Licensee complied, challenging the trial court's finding that she refused a blood test.

## II. Discussion

We review the order on appeal to assess whether substantial evidence supports the trial court's findings, and whether the trial court committed an abuse of discretion or error of law. *Pritchett v. Dep't of Transp., Bureau of Driver Licensing*, 267 A.3d 618, 621 n.3 (Pa. Cmwlth. 2021) (quoting *Renfroe v. Dep't of Transp., Bureau of Driver Licensing*, 179 A.3d 644, 648 n.3 (Pa. Cmwlth. 2018) (*en banc*)). It is within the trial court's province to resolve questions of credibility and evidentiary weight. *Renfroe*, 179 A.3d at 651 (citing *Hasson v. Dep't of Transp., Bureau of Driver Licensing*, 866 A.2d 1181, 1186 (Pa. Cmwlth. 2005)). If sufficient evidence exists to support the trial court's findings, we may not disturb them. *Id.* (quoting *Mooney v. Dep't of Transp., Bureau of Driver Licensing*, 654 A.2d 47, 50 (Pa. Cmwlth. 1994)).

---

[1] Licensee initially appealed to our Superior Court. The Department filed an application to transfer the case to this Court, which the Superior Court granted. *See Commonwealth v. Duffey*, 639 A.2d 1174, 1177 (Pa. 1994) (the Commonwealth Court's exclusive jurisdiction pursuant to 42 Pa.C.S. § 762(a)(3) includes secondary review of appeals from operating privilege suspensions); 42 Pa.C.S. § 5103(a) (if an appeal is filed in a court of the Commonwealth that lacks jurisdiction, the court shall not quash the appeal "but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the appeal . . . shall be treated as if originally filed in the transferee tribunal on the date when the appeal . . . was first filed" in the court without jurisdiction).

The Vehicle Code provides that the Department shall suspend the operating privilege of any licensee who is arrested for DUI pursuant to 75 Pa.C.S. § 3802 and refuses to submit to chemical testing.[2] 75 Pa.C.S. § 1547(b)(1). The arresting police officer must alert the licensee, in relevant part, that refusal to submit to testing will result in suspension. 75 Pa.C.S. § 1547(b)(2)(i). To support its suspension decision at an appeal hearing, the Department must prove that (1) the arresting police officer had reasonable grounds to believe the licensee was driving under the influence, (2) the officer asked the licensee to submit to testing, (3) the officer warned the licensee that refusal would result in suspension, and (4) the licensee refused. *Olt v. Dep't of Transp., Bureau of Driver Licensing*, 218 A.3d 1, 5-6 (Pa. Cmwlth. 2019) (quoting *Zwibel v. Dep't of Transp., Bureau of Driver Licensing*, 832 A.2d 599, 604 (Pa. Cmwlth. 2003)). If the Department meets this initial hurdle, the burden shifts to the licensee to prove that he or she was incapable of making a knowing and conscious refusal or physically incapable of testing. *Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 496 (Pa. Cmwlth. 2019) (quoting *Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013)).

Whether a licensee refused chemical testing is a question of law that depends on the trial court's factual findings. *Broadbelt v. Dep't of Transp., Bureau of Driver Licensing*, 903 A.2d 636, 640 n.4 (Pa. Cmwlth. 2006) (citing *Dep't of Transp. v. Renwick*, 669 A.2d 934 (Pa. 1996)). In response to a police officer's request for a chemical test, "'anything less than an unqualified, unequivocal assent . . . constitutes a refusal . . . .'" *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015) (quoting *Todd v. Dep't of Transp., Bureau of Driver Licensing*,

---

[2] The Department suspended Licensee's operating privilege for 12 months pursuant to 75 Pa.C.S. § 1547(b)(1)(i).

5

723 A.2d 655, 658 (Pa. 1999)). This does not mean that a licensee must consent to testing "without making a single inquiry or request . . . ." *Id.* Rather, the trial court must consider if the licensee's "overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing." *Id.* at 749 (collecting cases). The police officer must provide the licensee with a reasonable opportunity to submit to testing before a trial court may conclude the licensee refused. *Id.* at 749-50 (quoting *Todd*, 723 A.2d at 659). The officer need not, however, spend time "'either cajoling the licensee or . . . waiting to see if the licensee will ultimately change his mind.'" *Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 440 (Pa. Cmwlth. 2014) (quoting *Broadbelt*, 903 A.2d at 641 n.7).

Licensee divides her claim into two interrelated arguments. Licensee presents her statements to Officer Hilliard as she described them during the hearing on August 20, 2021, and as Officer Hilliard described them. She contends that, in either case, she did not refuse to submit to blood testing. Discussing her own version of events, Licensee argues she did not refuse a blood test but merely asked Officer Hilliard a "rhetorical question" about whether she could take another type of test. Licensee's Br. at 13-14, 20. Turning to Officer Hilliard's version of events, Licensee contends she made "a mere expression of concern," stating she was worried and did not know how much alcohol she consumed. *Id.* at 14, 19-20. Licensee complains that Officer Hilliard did not offer her the opportunity to read the DL-26B form herself, and that his "quick-trigger categorization" of her statements deprived her of an opportunity to consent to testing. *Id.* at 13, 20.[3] Licensee cites to several cases in support of her

---

[3] Licensee maintains in her brief that Officer Hilliard filled out the DL-26B form to reflect that she refused a blood test, and that he "placed his initials where a motorist's normally would be to indicate the alleged refusal . . . ." Licensee's Br. at 19. We have reviewed the copy of the DL-26B form in the original record, which refutes this characterization. Officer Hilliard's initials **(Footnote continued on next page…)**

claim, which she contends are similar to this matter and require that we reverse the trial court's decision, including *Department of Transportation, Bureau of Traffic Safety v. Tillitt*, 411 A.2d 276 (Pa. Cmwlth. 1980); *Department of Transportation, Bureau of Traffic Safety v. Doherty*, 490 A.2d 481 (Pa. Cmwlth. 1985); *Department of Transportation, Bureau of Traffic Safety v. Ferrara,* 493 A.2d 154 (Pa. Cmwlth. 1985); and *Bomba v. Department of Transportation, Bureau of Driver Licensing*, 28 A.3d 946 (Pa. Cmwlth. 2011).

Our review of the record confirms that substantial evidence supports the trial court's findings, and we see no basis to conclude that the trial court committed an abuse of discretion or error of law. As summarized above, Officer Hilliard testified that he read the DL-26B form to Licensee at the hospital, and that she responded by indicating she "was unsure how much alcohol was in her drink and afraid to submit to testing." O.R., Item No. 17, N.T., 8/20/21, at 5-8. Because we defer to the trial court's credibility determinations, we limit our analysis to the statement that the trial court found Licensee made to Officer Hilliard, and we do not consider Licensee's alternative version of events. *Renfroe*, 179 A.3d at 651. Licensee's response plainly indicated an unwillingness to comply with a blood test, rather than an unqualified, unequivocal assent. *See Nardone*, 130 A.3d at 748-49. Once Licensee made this statement, it was not Officer Hilliard's duty to try and change her mind or assuage her concerns. *Walkden*, 103 A.3d at 440.

Critically, substantial evidence confirms that Licensee received a reasonable opportunity to consent to blood testing, and our review reveals no reason to believe

---

appear in the section of the DL-26B form indicating that he read the form to Licensee and gave her the opportunity to submit to a blood test, in the section indicating that Licensee refused to sign the form after Officer Hilliard advised her of its contents, and in the "Officer Signature" section.

Licensee had inadequate time to ponder her options or reach a decision. Contrary to Licensee's position, Officer Hilliard testified that he did not recall Licensee making any additional statements after indicating that she was afraid to submit to a blood test. O.R., Item No. 17, N.T., 8/20/21, at 14. Moreover, Licensee did not attempt to consent to testing once she learned Officer Hilliard deemed her response a refusal and would be seeking a search warrant. *Id.* at 15-16. Officer Hilliard explained that he initialed the section of the DL-26B form indicating that Licensee declined to sign the form after refusing the test. *Id.* at 9-10, 16.

The cases Licensee cites in her brief do not compel a different conclusion. In *Ferrara*, a licensee asked if she could call someone, presumably an attorney, after a police officer requested that she submit to blood or breath testing. 493 A.2d at 155-57. The officer agreed that the licensee could make the phone call. *Id.* at 155-56. Later, the licensee asked to take a breathalyzer test, and the officer refused, saying it was "'too late.'" *Id.* at 156. This Court held that the licensee's request to make a phone call was not an unqualified refusal, and "that a request for consultation must be responded to *negatively* before a refusal can be established." *Id.* at 157 (emphasis in original). Similarly, in *Doherty*, this Court addressed a situation where a police officer requested that the licensee submit to a breathalyzer test. 490 A.2d at 481. When the licensee asked whether he could call his attorney, the officer recorded the response as a refusal. *Id.* This Court reasoned that the licensee did not refuse to test, as he merely asked if he could call his attorney and did not condition his consent to testing on an affirmative response. *Id.* at 482. It is important to note that this Court decided *Ferrara* and *Doherty* prior to our Supreme Court's decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 878 (Pa. 1989), which provided that, when a licensee asks to consult with an attorney prior to

8

taking a breathalyzer test, the police officer must explain to the licensee that he or she has no right to do so. Consistent with current law, the DL-26B form in this case stated that a request to speak with an attorney prior to deciding whether to submit to a blood test would indicate a refusal. *See Garner v. Dep't of Transp., Bureau of Driver Licensing*, 879 A.2d 327, 331 (Pa. Cmwlth. 2005).

*Tillitt* involved a licensee who refused to submit to a breathalyzer test before a police officer warned him of the consequences of refusal. 411 A.2d at 277. After the officer warned the licensee, the licensee equivocated briefly and then agreed to test. *Id.* This Court explained that it could not conclude that the licensee's response was "[s]ubstantially short of an unqualified, unequivocal assent" once he received the required warning. *Id.* Next, the licensee in *Bomba* agreed to a breathalyzer test and attempted to give a breath sample, but the sample was insufficient. 28 A.3d at 948. The licensee asked to take the test again, but the police officer declined and marked the licensee's initial failure as a refusal. *Id.* This Court concluded that the licensee's failure to complete the test was not a refusal, emphasizing that she did not "deliberately tr[y] to delay or undermine the testing process" but "made a good faith, but unsuccessful, attempt to provide a breath sample and immediately requested to attempt the test a second time." *Id.* at 951.

In sum, these cases involved licensees who either (1) asked the police officer if they could call an attorney, having not been advised this was impermissible, or (2) consented to testing. Neither situation was present here. Pursuant to the trial court's factual findings and credibility determinations, Licensee did not ask Officer Hilliard any questions and did not consent to testing. Because the cases Licensee cites in her brief are readily distinguishable, they do not require that we disturb the trial court's order.

9

### III. Conclusion

For all the foregoing reasons, we conclude that Licensee refused to submit to a blood test, and we affirm the trial court's order dismissing her appeal and reinstating the suspension of her operating privilege.

_____
STACY WALLACE, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melanie Dawn Donnelly,            :
                    Appellant      :
                                  :
              v.                 :    No. 1290 C.D. 2021
                                  :
Commonwealth of Pennsylvania,    :
Department of Transportation,      :
Bureau of Driver Licensing         :

# **O R D E R**

       **AND NOW**, this 13th day of May 2022, the August 20, 2021 order of the Court of Common Pleas of Adams County is hereby **AFFIRMED**.

 

                            _____
                            STACY WALLACE, Judge